UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | |
| Plaintiff/Counter-Defendant, | |
| v. | Civil Action No.: 1:18-cv-00639-LO-JFA |
| LOCKTON AFFINITY SERIES OF LOCKTON AFFINITY, LLC, and KANSAS CITY SERIES OF LOCKTON COMPANIES, LLC, | |
| Defendants/Counter-Plaintiffs. | |

## DEFENDANTS' ANSWER AND COUNTERCLAIMS

Defendants Lockton Affinity Series of Lockton Affinity, LLC ("Lockton Affinity") and

Kansas City Series of Lockton Companies, LLC ("Lockton KC") (together, "Lockton"), by and

through their undersigned counsel, hereby submit this answer to the Complaint and Jury Demand

(the "Complaint") filed by Plaintiff National Rifle Association of America (the "NRA"), and

assert counterclaims against the NRA.

## INTRODUCTION

This case arises out of two multi-year agreements between Lockton and the NRA,

pursuant to which Lockton provides insurance brokerage and administration services for a series

of insurance programs offered for the benefit of NRA members (the "NRA-Endorsed

Programs").[1] The NRA's breach of contract claims are premised on the theory that Lockton

---

[1] Lockton Affinity functions as administrator for the NRA-Endorsed Programs under an Amended and Restated Insurance Program Agreement, effective January 1, 2011 and amended thereafter (the "Program Agreement"), and Lockton KC functions as manager for the NRA-Endorsed Programs under an Insurance Consulting and Programs Management Agreement,

breached its contractual obligation to ensure that the NRA-Endorsed Programs were compliant with applicable laws and regulations.  According to the NRA's Complaint, Lockton's real sin was that it wrongfully agreed to a consent order with the New York Department of Financial Services ("DFS") whereby, among other things, Lockton agreed to pay a civil monetary penalty of $7,000,000 and cease offering the NRA-Endorsed Programs in New York.  The NRA has commenced a separate lawsuit against DFS and the Governor of New York in which the NRA contends that DFS's investigation of Lockton was improperly motivated by political views, and that Lockton should not have agreed to a settlement.

The Complaint, however, ignores that the NRA's own overtly political and inflammatory approach to marketing certain of the NRA-Endorsed Programs, as well as its provocative public stances, have resulted in a shift in the enforcement priorities of insurance regulators and heightened scrutiny being applied to the NRA-Endorsed Programs.  Indeed, the Complaint makes clear that the NRA believes that "the political landscape has changed" and that the NRA is the victim of a "blacklisting campaign" (Compl. at 2, 4), but fails to acknowledge that the NRA has placed the NRA-Endorsed Programs squarely within this broader political maelstrom. This factor, not Lockton's conduct or performance of its contractual obligations, is the primary reason that Lockton has been forced to revisit its historical compliance advice, as well as the structure and operation of the NRA-Endorsed Programs.

Notwithstanding this NRA-induced shift in regulatory enforcement priorities and expectations, Lockton is taking, or is prepared to take, steps to avoid any harm to the NRA or its members, including through changes to the NRA-Endorsed Programs where necessary.  In short,

---

effective January 1, 2011 and amended thereafter (the "Management Agreement") (together, the "Agreements").

contrary to the allegations in the Complaint, Lockton has performed its obligations under the Agreements in good faith for over seventeen years and continues to do so today.

The NRA, by contrast, has refused to cooperate in this effort and perform its obligations in good faith, choosing instead to attack its political adversaries and advance its political agenda under the guise of a breach of contract suit against Lockton.  Even worse, the NRA has adopted an affirmative strategy of frustrating Lockton's ability to perform under the Agreements, including by suspending ordinary course business communications, insisting that myriad issues relating to the administration of complex insurance programs be communicated only to and with the NRA's litigation counsel, refusing to respond to remedial proposals made by Lockton in light of the evolving regulatory situation, and exercising contractual books and records inspection rights for the improper purpose of advancing the NRA's litigation position, rather than to work constructively in the interests of policyholders.

Moreover, although the NRA seeks to recover damages for, among other things, lost royalty amounts allegedly owed to the NRA by Lockton, reputational harm, and lost goodwill, the Complaint omits a key fact:  the NRA is not contractually entitled to any royalty payments or other forms of compensation from Lockton after March 31, 2018.  And, on information and belief, the recent political controversy surrounding the NRA, including any fall-out from Lockton's settlement with DFS, has actually bolstered NRA membership and fundraising, undermining any claim that the NRA has been financially harmed as a result of any alleged breach of contract by Lockton.

At the same time, the NRA's course of conduct constitutes an ongoing breach of its contractual obligations to Lockton, including obligations based on the implied covenant of good faith and fair dealing inherent in every contract.  The NRA's allegation that it is owed royalty

payments has also created a ripe controversy with respect to the parties' respective rights and obligations under their existing contractual relationship.  Accordingly, Lockton asserts the counterclaims set forth below and seeks to recover damages and obtain declaratory relief from the Court.

## ANSWER

Lockton answers the numbered paragraphs in the Complaint as follows:[2]

1.      Lockton admits the allegations in the first sentence of Paragraph 1 of the Complaint.  Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 1 of the Complaint and, on that basis, denies those allegations.

2.      Lockton admits the allegations in the first sentence of Paragraph 2 of the Complaint.  Lockton denies the allegations in the second sentence of Paragraph 2 of the Complaint, except that Lockton admits that Lockton Affinity is an affiliate of Lockton Companies, LLC.  Lockton admits the allegations in the third sentence of Paragraph 2 of the Complaint.  The fourth sentence of Paragraph 2 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Lockton denies the allegations in the fourth sentence of Paragraph 2 of the Complaint.

3.      Lockton admits the allegations in the first sentence of Paragraph 3 of the Complaint.  Lockton denies the allegations in the second sentence of Paragraph 3 of the

---

[2]      The Complaint contains a Preliminary Statement with unnumbered paragraphs, as well as headings, subheadings, and footnotes, to which no response is required.  Lockton does not admit that the Complaint's Preliminary Statement, headings, subheadings, or footnotes are accurate or appropriate for any purpose and, to the extent a response is required, Lockton denies the allegations in the Complaint's Preliminary Statement, headings, subheadings, and footnotes.

Complaint, except that Lockton admits that Lockton KC is a series of Lockton Companies, LLC. Lockton admits the allegations in the third sentence of Paragraph 3 of the Complaint.

4.      Paragraph 4 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 4 of the Complaint, except that Lockton admits that complete diversity of citizenship among the parties exists for the purpose of 28 U.S.C. § 1332(a).

5.      Paragraph 5 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 5 of the Complaint.

6.      Paragraph 6 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 6 of the Complaint.

7.      Paragraph 7 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 7 of the Complaint.

8.      Paragraph 8 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 8 of the Complaint and respectfully refers the Court to the Agreements for the complete and accurate contents thereof.

9.      Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint and, on that basis, denies those allegations.

10.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and, on that basis, denies those allegations.

11.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint and, on that basis, denies those allegations.

12.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of Paragraph 12 of the Complaint and, on that basis, denies those allegations.  Lockton denies the allegations in the fourth sentence of Paragraph 12 of the Complaint and respectfully refers the Court to the Agreements for context on the nature of the parties' contractual relationship.

13.     Lockton denies the allegations in Paragraph 13 of the Complaint and respectfully refers the Court to the cited website for the complete and accurate contents thereof.

14.     Lockton denies the allegations in Paragraph 14 of the Complaint.

15.     The allegation in Paragraph 15 of the Complaint is too vague to be answered and, on that basis, Lockton denies the allegation.

16.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 16 of the Complaint and, on that basis, denies those allegations.  With respect to the second sentence of Paragraph 16 of the Complaint, Lockton admits that it does not underwrite insurance coverage for any of the NRA-Endorsed Programs.  Lockton denies the allegations in the third sentence of Paragraph 16 of the Complaint and respectfully refers the Court to the Agreements for the complete and accurate contents thereof.  Lockton denies the allegations in the fourth sentence of Paragraph 16 of the Complaint.

17.     Lockton admits that the Agreements were executed in 2011, but otherwise denies the allegations in Paragraph 17 of the Complaint.

18.     Lockton admits that the Program Agreement became effective January 1, 2011, that the Program Agreement remains effective through December 31, 2024, and that Lockton has

not sought to terminate the Program Agreement, but otherwise denies the allegations in Paragraph 18 of the Complaint.

19.     Paragraph 19 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 19 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.

20.     Paragraph 20 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 20 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.

21.     Paragraph 21 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 21 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.

22.     The first sentence of Paragraph 22 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in the first sentence of Paragraph 22 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.  Lockton denies the allegations in the second sentence of Paragraph 22 of the Complaint.

23.     Lockton denies the allegations in Paragraph 23 of the Complaint.

24.     Lockton admits that the Management Agreement became effective January 1, 2011, and that the Management Agreement remains effective through December 31, 2024, but otherwise denies the allegations in Paragraph 24 of the Complaint.

25.     Paragraph 25 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 25 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

26.     Paragraph 26 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 26 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

27.     Paragraph 27 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 27 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

28.     Paragraph 28 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 28 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

29.     Paragraph 29 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 29 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

30.     Paragraph 30 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 30 of

the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

31.     Paragraph 31 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 31 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

32.     Paragraph 32 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 32 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

33.     Paragraph 33 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 33 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

34.     Paragraph 34 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 34 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

35.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint and, on that basis, denies those allegations.

36.     Lockton admits that Lockton Affinity assisted the NRA in developing the insurance aspects of the Carry Guard program, but otherwise denies the allegations in Paragraph 36 of the Complaint.

37.     Lockton denies the allegations in Paragraph 37 of the Complaint and respectfully refers the Court to the referenced press release for the complete and accurate contents thereof.

38.     Lockton denies the allegations in Paragraph 38 of the Complaint.

39.     Lockton denies the allegations in Paragraph 39 of the Complaint.

40.     Lockton denies the allegations in Paragraph 40 of the Complaint and respectfully refers the Court to the referenced email for the complete and accurate contents thereof.

41.     Lockton denies the allegations in Paragraph 41 of the Complaint.

42.     Lockton denies the allegations in Paragraph 42 of the Complaint.

43.     Lockton denies the allegations in Paragraph 43 of the Complaint and respectfully refers the Court to the referenced writing for the complete and accurate contents thereof.

44.     Lockton denies the allegations in Paragraph 44 of the Complaint.

45.     Lockton denies the allegations in Paragraph 45 of the Complaint.

46.     Lockton denies the allegations in Paragraph 46 of the Complaint.

47.     Lockton denies the allegations in Paragraph 47 of the Complaint.

48.     Lockton denies the allegations in Paragraph 48 of the Complaint and respectfully refers the Court to the referenced *Wall Street Journal* report for the complete and accurate contents thereof.

49.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of the Complaint and, on that basis, denies those allegations.

50.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint and, on that basis, denies those allegations.

51.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint and, on that basis, denies those allegations.

52.     Lockton admits that, on or about October 24, 2017, Lockton Companies, LLC and the NRA received subpoenas from DFS requesting documents relating to the Carry Guard program, but otherwise denies the allegations in Paragraph 52 of the Complaint.

53.     Lockton admits that, during December 2017, Lockton met with the NRA, but otherwise denies the allegations in Paragraph 53 of the Complaint.

54.     Lockton denies the allegations in Paragraph 54 of the Complaint.

55.     Lockton admits that, on February 26, 2018, Lockton tweeted the stated quote, but otherwise denies the allegations in Paragraph 55 of the Complaint.

56.     Lockton lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint and, on that basis, denies those allegations.

57.     Lockton denies the allegations in Paragraph 57 of the Complaint.

58.     Lockton denies the allegations in Paragraph 58 of the Complaint.

59.     Lockton denies the allegations in Paragraph 59 of the Complaint.

60.     Lockton denies the allegations in Paragraph 60 of the Complaint.

61.     Lockton denies the allegations in Paragraph 61 of the Complaint.

62.     Lockton denies the allegations in Paragraph 62 of the Complaint.

63.     Lockton denies the allegations in Paragraph 63 of the Complaint.

64.     Lockton denies the allegations in Paragraph 64 of the Complaint.

65.     Lockton denies the allegations in Paragraph 65 of the Complaint.

66.     Paragraph 66 of the Complaint is a jury trial demand to which no response is required.

67.     With respect to Paragraph 67 of the Complaint, Lockton incorporates by reference, as if fully set forth herein, its responses to each and every allegation set forth above.

68.     Paragraph 68 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 68 of the Complaint.

69.     The first sentence of Paragraph 69 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Lockton denies the allegations in the first sentence of Paragraph 69 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.  Lockton denies the allegations in the second and third sentences of Paragraph 69 of the Complaint.

70.     Paragraph 70 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 70 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.

71.     Paragraph 71 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 71 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.

72.     Paragraph 72 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 72 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.

73.     Paragraph 73 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 73 of

the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.

74.     The first sentence of Paragraph 74 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in the first sentence of Paragraph 74 of the Complaint and respectfully refers the Court to the Program Agreement for the complete and accurate contents thereof.  Lockton denies the allegations in the second sentence of Paragraph 74 of the Complaint.

75.     Lockton denies the allegations in Paragraph 75 of the Complaint.

76.     Lockton admits that Lockton has received inquiries from certain state regulatory agencies concerning certain NRA-Endorsed Programs, but otherwise denies the allegations in Paragraph 76 of the Complaint.

77.     Lockton denies the allegations in Paragraph 77 of the Complaint.

78.     Lockton admits that, on February 26, 2018, Lockton tweeted the stated quote, but otherwise denies the allegations in Paragraph 78 of the Complaint.

79.     Lockton denies the allegations in Paragraph 79 of the Complaint.

80.     Lockton denies the allegations in Paragraph 80 of the Complaint.

81.     Lockton denies the allegations in Paragraph 81 of the Complaint.

82.     Lockton denies the allegations in Paragraph 82 of the Complaint.

83.     Lockton denies the allegations in Paragraph 83 of the Complaint.

84.     With respect to Paragraph 84 of the Complaint, Lockton incorporates by reference, as if fully set forth herein, its responses to each and every allegation set forth above.

85.     Paragraph 85 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 85 of the Complaint.

86.     The first sentence of Paragraph 86 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Lockton denies the allegations in the first sentence of Paragraph 86 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.  Lockton denies the allegations in the second and third sentences of Paragraph 86 of the Complaint.

87.     Paragraph 87 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 87 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

88.     Paragraph 88 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 88 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

89.     Paragraph 89 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 89 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

90.     Paragraph 90 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 90 of

the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

91.     Paragraph 91 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 91 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

92.     Paragraph 92 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Lockton denies the allegations in Paragraph 92 of the Complaint and respectfully refers the Court to the Management Agreement for the complete and accurate contents thereof.

93.     Lockton denies the allegations in Paragraph 93 of the Complaint.

94.     Lockton admits that Lockton has received inquiries from certain state regulatory agencies concerning certain NRA-Endorsed Programs, but otherwise denies the allegations in Paragraph 94 of the Complaint.

95.     Lockton denies the allegations in Paragraph 95 of the Complaint.

96.     Lockton admits that, on February 26, 2018, Lockton tweeted the stated quote, but otherwise denies the allegations in Paragraph 96 of the Complaint.

97.     Lockton denies the allegations in Paragraph 97 of the Complaint.

98.     Lockton denies the allegations in Paragraph 98 of the Complaint.

99.     Lockton denies the allegations in Paragraph 99 of the Complaint.

100.    Lockton denies the allegations in Paragraph 100 of the Complaint.

101.    Lockton denies the allegations in Paragraph 101 of the Complaint.

## GENERAL DENIAL

Lockton denies all allegations in the Complaint not expressly admitted above.  Lockton further denies that the NRA is entitled to judgment in its favor or any relief, including the relief requested by the NRA in the Complaint.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any issue that would otherwise rest upon the NRA, Lockton asserts the following affirmative defenses:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The NRA's claims are barred, in whole or in part, because Lockton did not breach the Agreements.

### THIRD DEFENSE

The NRA's claims are barred, in whole or in part, because Lockton has performed under the Agreements at all times in good faith.

### FOURTH DEFENSE

The NRA's claims are barred, in whole or in part, because Lockton does not owe any fiduciary duty to the NRA.

### FIFTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA breached or otherwise failed to perform under the Agreements.

## SIXTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA breached the implied covenant of good faith and fair dealing under the Agreements.

## SEVENTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA is pursuing this litigation in bad faith and for an improper purpose.

## EIGHTH DEFENSE

The NRA's claims are barred, in whole or in part, by the doctrine of unclean hands.

## NINTH DEFENSE

The NRA's claims are barred, in whole or in part, by the doctrine of estoppel.

## TENTH DEFENSE

The NRA's claims are barred, in whole or in part, by the doctrines of waiver, release, acquiescence, and/or ratification.

## ELEVENTH DEFENSE

The NRA's claims are barred, in whole or in part, by the doctrine of laches.

## TWELFTH DEFENSE

The NRA's claims are barred, in whole or in part, by the applicable statute of limitations.

## THIRTEENTH DEFENSE

The NRA's claims are barred, in whole or in part, by the doctrines of impracticability and/or impossibility.

## FOURTEENTH DEFENSE

The NRA's claims are barred, in whole or in part, because they are contrary to public policy.

## FIFTEENTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA has not suffered any damages.

## SIXTEENTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA's alleged damages, if such damages exist, were not caused by Lockton.

## SEVENTEENTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA's alleged damages, if such damages exist, were caused or contributed to by the NRA's own conduct, the conduct of its agents or employees, and/or the conduct of third-parties over which Lockton had no responsibility or control.

## EIGHTEENTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA's alleged damages are too speculative and too remote.

## NINETEENTH DEFENSE

The NRA's claims are barred, in whole or in part, because the NRA failed to mitigate its alleged damages.

## TWENTIETH DEFENSE

The NRA's claims are barred, in whole or in part, because the damages that the NRA seeks, if awarded, would result in unjust enrichment of the NRA.

## RESERVATION OF ADDITIONAL DEFENSES

Lockton intends to rely upon such other and further defenses as may become available or apparent during this case and hereby reserves all rights to assert such defenses.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Lockton Affinity and Lockton KC assert the following counterclaims against the NRA and allege as follows:

## PARTIES

1.      Lockton Affinity is a series of a series limited liability company organized under the laws of the State of Missouri.  Founded in 1987, Lockton Affinity is one of the nation's largest insurance program administrators for affinity groups.

2.      Lockton KC is a series of a series limited liability company organized under the laws of the State of Missouri.

3.      The NRA is a nonprofit corporation organized under the laws of the State of New York with its principal place of business located in Fairfax, Virginia.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Lockton and the NRA are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over the NRA because the NRA transacts business within, and has or exceeds sufficient minimum contacts with, the Commonwealth of Virginia.  This Court also has personal jurisdiction over the NRA because the NRA has consented to personal jurisdiction in this Court under the Agreements and by filing its Complaint in this Court.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the NRA resides in this judicial district.  Venue is also proper in this Court because the NRA consented to venue in this judicial district under the Agreements and by filing its Complaint in this Court.

## FACTUAL BACKGROUND

### A.      The Agreements

7.      Lockton Affinity and the NRA are parties to the Program Agreement pursuant to which Lockton Affinity functions as administrator for the NRA-Endorsed Programs.  The Program Agreement became effective January 1, 2011 and, pursuant to Addendum G to the Program Agreement, remains effective through December 31, 2024.

8.      Prior to October 2017, the NRA received royalty payments and other forms of compensation from Lockton Affinity on account of the NRA-Endorsed Programs, calculated based on various contractual formulas.  In or about late 2017, the parties negotiated Addendum H to the Program Agreement.  Addendum H, which became effective as of October 1, 2017, eliminated all existing payment obligations to the NRA under the Program Agreement and established that the exclusive form of compensation to be paid by Lockton Affinity to the NRA was a monthly fixed payment of $600,000.  This payment obligation extended through March 31, 2018.  The parties have not agreed to any further payment obligation and, accordingly, the NRA is not entitled to any compensation, including royalty payments, under the Program Agreement.

9.      Lockton KC and the NRA are parties to the Management Agreement pursuant to which Lockton KC functions as manager of the NRA-Endorsed Programs.  The Management Agreement became effective January 1, 2011 and, pursuant to Addendum C to the Management Agreement, remains effective through December 31, 2024.

10.     Lockton KC has no separate obligation under the Management Agreement to provide compensation, including royalty payments, to the NRA with respect to the NRA-Endorsed Programs.

11.     Lockton has performed its obligations under the Agreements in good faith at all relevant times and continues to do so today.

   **B.     The Carry Guard Program**

12.     In or about late 2016 or early 2017, the NRA developed a membership program focused on firearms training that eventually became known as Carry Guard.

13.     The Carry Guard program was later amended to include insurance and non-insurance components.  The Carry Guard program includes a membership and the option of four levels of insurance—each corresponding to different levels of insurance coverage for NRA members who use their firearm in self-defense and for events like an accidental firearm discharge.

14.     The NRA is responsible for the non-insurance components of the Carry Guard program, including firearms training.  In addition, under the Program Agreement, the NRA is responsible for any marketing efforts and associated costs in connection with the Carry Guard membership.

   **C.     The NRA's Overtly Political Conduct Creates a Shift in the Regulatory Environment Governing the NRA-Endorsed Programs**

15.     The  NRA's overtly political approach to marketing, as well as its intentionally provocative stances in the media, are well-documented.  The *Washington Post*, for example, explained that the NRA, unlike other interest groups in the United States with millions of members, "unabashedly embraces controversy, lunging into battle with fiery rhetoric and no-holds-barred political attacks."[3]

---

[3]     Marc Fisher, *Why the NRA Doesn't Much Care If Businesses Spurn Them*, WASH. POST (Mar. 2, 2018).

16.     On information and belief, the NRA, together with Ackerman McQueen, a marketing and public relations firm retained by the NRA, created an inflammatory marketing campaign concerning certain of the NRA-Endorsed Programs, including Carry Guard, designed to maximize political controversy in the United States and thereby increase NRA membership and sales of insurance coverage, from which the NRA derived revenues.

17.     On or about February 14, 2018, following the tragic school shooting at Marjory Stoneman Douglas High School in Parkland, Florida, the national conversation on gun control was reignited.  On information and belief, the NRA, seeking to capitalize on the political controversy generated by the school shooting, launched a multi-pronged campaign to raise money, recruit members, and drum up support for its political agenda.

18.     On information and belief, the NRA massively increased its spending on digital advertising less than one week following the school shooting in Parkland, Florida.  For example, the *Chicago Tribune* reported that the NRA spent "more than six times as much" on digital advertising in the days following the shooting than it did in the weeks before the shooting.[4]  The *Chicago Tribune* also reported that the bulk of the digital advertising increase was on social media platforms, including Facebook where the NRA increased its spending from $4,400 per day to $34,000 per day.[5]

19.     On information and belief, donations to the NRA spiked significantly in the aftermath of the school shooting in Parkland, Florida.  For example, the Center for Responsive Politics reported that the NRA received "twice as much money from nearly five times as many

---

[4]     Katharine Gammon, *New Data Show the NRA Increased Online Ad Spending Aggressively After Parkland Shooting*, CHI. TRIB. (Mar. 23, 2018).

[5]     *Id.*

donors" in the week after the shooting than it did in the week before.[6]  Further, multiple news

organizations reported that the NRA's Political Victory Fund, which contributes money to

political campaigns for NRA-friendly candidates, collected $2.4 million in donations in

March 2018, the highest monthly total in nearly two decades.[7]

       20.     On or about April 15, 2018, in the wake of nationwide rallies in favor of gun

control, the NRA launched and publicized a membership drive with the goal of adding 100,000

new members in 100 days, telling prospective members that "[t]he threat to our Second

Amendment has never been greater."[8]

       21.     On information and belief, since the school shooting in Parkland, Florida, the

NRA has increased its membership by more than one million members.  Specifically, prior to the

shooting, the NRA reported that it had "nearly" or "approximately" five million members.  On or

about June 2, 2018, the NRA publicly announced that its membership had swelled to "more

than" six million members.

       22.     The NRA's politically-charged agenda, and its controversial position in society,

predates the school shooting in Parkland, Florida and has caused a sharp increase in scrutiny of

the NRA-Endorsed Programs administered by Lockton.  This has resulted in a shift in the

enforcement priorities and expectations of insurance regulators and government authorities.

Lockton, an apolitical insurance brokerage company, has done nothing to exacerbate this shift

and takes no position regarding the political views of its clients or regulators.  Rather, Lockton is

---

[6]     Geoff West, *NRA Donations Spiked After Parkland Shooting*, CENTER FOR RESPONSIVE POLITICS (Mar. 24, 2018).

[7]     *See, e.g.*, Christopher Ingraham, *After Parkland Shooting, NRA Posts Biggest Fundraising Haul In Nearly 20 Years*, WASH. POST (Apr. 24, 2018).

[8]     *Id.*

focused exclusively on working diligently to both discharge its responsibilities as a regulated entity, and to act in the best interests of NRA members seeking insurance coverage, within the confines of applicable laws and regulations as interpreted by insurance regulators.

**D.    The NRA Frustrates Lockton's Ability to Perform Under the Agreements and Breaches the Implied Covenant of Good Faith and Fair Dealing**

23.    Notwithstanding that the NRA—not Lockton—created the shifting regulatory environment, Lockton is taking, or is prepared to take, steps to remediate the NRA-Endorsed Programs, where necessary, to comply with relevant insurance laws and to avoid any harm to the NRA and its members.

24.    Lockton's ability to do so, however, continues to be frustrated by the NRA's refusal to cooperate, provide information, and otherwise engage in dialogue with Lockton business personnel concerning the NRA-Endorsed Programs.  These failures on the part of the NRA, despite repeated unanswered requests and overtures by Lockton, violate the letter and spirit of the Agreements and have materially impaired or prevented Lockton from performing its obligations under the Agreements.

25.    The NRA's failure to work cooperatively with Lockton dates back to at least January 26, 2018.  On that day, at the NRA's request, Lockton met with the NRA and presented a range of proposed solutions to remediate the NRA-Endorsed Programs, including Carry Guard, to ensure their continued availability to NRA members.  Lockton and the NRA discussed, for example, the possibility of the NRA forming an NRA-owned insurance agency and the availability of alternative carriers for certain NRA-Endorsed Programs in light of the concern that public pressure may cause one or more carriers to cease underwriting coverage for the NRA-Endorsed Programs.  Subsequent to that meeting, on January 28, 2018, Lockton provided the NRA with a number of follow-up action items and requests for information in order to ensure

that the NRA-Endorsed Programs could be operated in a manner that complied with all applicable laws and regulations.

26. Despite repeated requests, Lockton received no feedback or response from the NRA on Lockton's proposals and follow-up items and requests. The NRA's failure to respond or engage in dialogue has materially impeded Lockton's ability to translate its proposals into action, perform its obligations under the Agreements, and act in the best interests of the NRA and its members.

27. In the months following the January 26, 2018 meeting, numerous attempts by Lockton representatives to engage with their business counterparts at the NRA have been met with silence or an indication that the NRA representatives are prohibited from communicating directly with Lockton. In or about April 2018, the NRA's outside litigation counsel, Brewer Attorneys & Counselors, instructed that all communications relating to the NRA-Endorsed Programs be directed to its attention. By doing so, the NRA has effectively taken the unreasonable position that the NRA-Endorsed Programs should be operated at the direction of its litigation counsel, as opposed to through dialogue among Lockton and NRA business personnel with a long history of working together to navigate insurance matters for the benefit of NRA members. As a result, many important business matters concerning the administration of the NRA-Endorsed Programs have gone unaddressed.

28. Lockton has made numerous efforts to try and get things back on track. For example, on May 10, 2018, counsel for Lockton sent a letter to counsel for the NRA, discussing the NRA's refusal to cooperate, provide information, and otherwise engage in dialogue with Lockton business personnel concerning administration of the NRA-Endorsed Programs. The

letter concluded with a proposal for a meeting among counsel and business representatives of Lockton and the NRA to discuss a pathway forward.

29.     Similarly, on May 15, 2018, counsel for Lockton sent a letter to counsel for the NRA, noting that communications among business people are critical to the effective functioning of the NRA-Endorsed Programs and reiterating Lockton's commitment to work with the NRA to discuss a pathway forward.  The next day, on May 16, 2018, counsel for Lockton sent yet another letter to counsel for the NRA, noting that Lockton continues to welcome a resumption of ordinary course business communications and dealings.

30.     Likewise, on May 25, 2018, counsel for Lockton sent a letter to counsel for the NRA, reminding the NRA that Lockton continues to await further discussion regarding Lockton's January 26, 2018 proposals and has also invited a meeting among counsel and business representatives of Lockton and the NRA.  None of these overtures have been accepted.

31.     Instead of cooperating with Lockton to operate the NRA-Endorsed Programs, beginning in or about May 2018, the NRA embarked on a campaign to inspect all documents, books, and records relating to the NRA-Endorsed Programs, purportedly under Section I.G.9. of the Program Agreement and Section I.E.9. of the Management Agreement.

32.     Specifically, on May 9, 2018, just five days after filing its original complaint against Lockton, the NRA demanded an inspection "within the next 72 hours."  Until that day, the NRA had never, in the over seventeen-year history of the parties' relationship, requested or demanded an inspection of documents, books, or records.

33.     Nevertheless, Lockton acted in good faith by making available to the NRA and its counsel documents, books, and records relating to the NRA-Endorsed Programs, fully discharging its obligations under the Agreements.  Indeed, during the NRA's three-day on-site

inspection, from May 30, 2018 through June 1, 2018, Lockton made available tens of thousands

of documents, all organized, assembled and efficiently provided for review by the NRA and its

counsel on multiple laptops, at great expense and with significant burden to Lockton.

34.     During the inspection, Lockton also made highly-sensitive business documents

and information available to the NRA for inspection based on the representation that the NRA

and its counsel would treat those documents as confidential under Section II.D. of the Program

Agreement.

35.     However, on June 1, 2018, immediately following the conclusion of its on-site

inspection, counsel for the NRA suggested that the NRA will use any documents made available

for any "use as it deems appropriate."  Despite having access to tens of thousands of documents

during the inspection, the NRA also unreasonably demanded that Lockton provide the NRA with

a number of additional categories of documents not properly related to the administration of the

NRA-Endorsed Programs.  This included demands for access to Lockton's internal email

communications and Lockton's settlement communications with regulators.

36.     On June 7, 2018, counsel for Lockton sent a letter to counsel for the NRA,

explaining that Lockton is prepared to engage in good-faith discussions to address the NRA's

additional document demands if the NRA assured Lockton that the documents would be treated

as confidential and used only for a proper purpose, namely operating the NRA-Endorsed

Programs.  To date, the NRA has not provided Lockton with that assurance or otherwise

responded to Lockton's letter.

37.     On information and belief, the NRA has sought and continues to exercise its

contractual inspection rights to obtain information for an improper purpose, including

furtherance of litigation against Lockton or other parties, or potentially sharing of Lockton's information with competitors.

## FIRST COUNTERCLAIM
(Breach of Contract)

38.     Lockton re-alleges and incorporates by reference the allegations in the foregoing paragraphs of these counterclaims as if fully set forth herein.

39.     The Agreements between Lockton and the NRA are valid and enforceable contracts.

40.     The Agreements, like all contracts governed by Virginia law, contain an implied covenant of good faith and fair dealing.  This implied covenant prohibits a party from acting arbitrarily, unreasonably, in bad faith, or in a way that prevents the other party from performing its contractual obligations.

41.     The NRA has breached the Agreements by unreasonably refusing to cooperate with Lockton's efforts to operate and/or remediate the NRA-Endorsed Programs, and preventing Lockton from performing certain of its obligations under the Agreements.  The NRA has also breached the Agreements by exercising its contractual discretion in bad faith with respect to its inspection of documents, books, and records related to the NRA-Endorsed Programs.

42.     The NRA's breaches of the Agreements were and continue to be intentional, knowing, and in willful and reckless disregard of the rights and interests of Lockton.

43.     Lockton has suffered and will continue to suffer harm as a result of the NRA's breaches of the Agreements.

44.     Lockton has suffered damages as a direct and proximate result of the NRA's breaches of the Agreements in an amount to be proven at trial.

## SECOND COUNTERCLAIM

(Declaratory Judgment – No Right to Compensation Under the Program Agreement)

45.     Lockton re-alleges and incorporates by reference the allegations in the foregoing paragraphs of these counterclaims as if fully set forth herein.

46.     The Program Agreement between Lockton Affinity and the NRA is a valid and enforceable contract.

47.     Under Addendum H to the Program Agreement, effective October 1, 2017, Lockton Affinity and the NRA agreed to eliminate all prior provisions in the Program Agreement for compensation to the NRA and replace those provisions with a fixed monthly payment of $600,000 from Lockton Affinity to the NRA through March 31, 2018.

48.     Lockton's position—consistent with the plain language of Addendum H to the Program Agreement—is that Lockton Affinity has no obligation to provide compensation, including royalty payments, to the NRA on account of the NRA-Endorsed Programs.  The NRA's position, as suggested in the Complaint, is that Lockton Affinity breached the Program Agreement because it "ceased making royalty payments to the NRA."  Compl. ¶ 82.

49.     An actual justiciable and substantial controversy exists between Lockton and the NRA concerning Lockton Affinity's alleged obligation to provide compensation, including royalty payments, to the NRA under the Program Agreement.  The controversy is of sufficient immediacy and reality to warrant issuance of a declaratory judgment under 28 U.S.C. § 2201.

50.     A declaratory judgment would serve the useful purpose of clarifying and settling the legal relations of Lockton Affinity and the NRA under the Program Agreement.

51.     A declaratory judgment would finalize the controversy and offer relief from uncertainty.

52.     Lockton is entitled to a declaration that Lockton Affinity has no obligation under the Program Agreement to provide compensation, including royalty payments, to the NRA after March 31, 2018.

## REQUEST FOR RELIEF

WHEREFORE, Lockton Affinity and Lockton KC respectfully request that this Court enter judgment in their favor and against the NRA as follows:

A.      That the Court dismiss the Complaint with prejudice and deny the NRA any recovery by reason thereof;

B.      With respect to the First Counterclaim, that the Court find that the NRA breached the Agreements by violating the implied covenant of good faith and fair dealing and award Lockton damages resulting from the NRA's breach;

C.      With respect to the Second Counterclaim, that the Court declare that Lockton Affinity has no obligation under the Program Agreement to provide any form of compensation, including royalty payments, to the NRA;

D.      That the Court award Lockton their reasonable costs, including attorneys' fees and expenses;

E.      That the Court award pre-judgment and post-judgment interest; and

F.      That the Court award any other and further relief as it may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Lockton Affinity and Lockton KC demand trial by jury in this action of all issues so triable.

Dated:  June 19, 2018                 Respectfully submitted,

LOCKTON AFFINITY SERIES OF LOCKTON AFFINITY, LLC, and KANSAS CITY SERIES OF LOCKTON COMPANIES, LLC

By:   /s/ Timothy J. McEvoy
       Timothy J. McEvoy (VSB No. 33277)
       Patrick J. McDonald (VSB No. 80678)
       CAMERON/MCEVOY PLLC
       4100 Monument Corner Drive, Suite 420
       Fairfax, VA 22030
       (703) 460-9341
       tmcevoy@cameronmcevoy.com

Of Counsel:

       Scott A. Edelman (*pro hac vice* pending)
       Tawfiq S. Rangwala (*pro hac vice* pending)
       Brenton T. Culpepper (*pro hac vice* pending)
       MILBANK, TWEED, HADLEY & McCLOY LLP
       28 Liberty Street
       New York, NY 10005-1413
       (212) 530-5000
       sedelman@milbank.com
       trangwala@milbank.com
       bculpepper@milbank.com

*Counsel for Defendants/Counter-Plaintiffs*
*Lockton Affinity Series of Lockton Affinity, LLC, and*
*Kansas City Series of Lockton Companies, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 19, 2018, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to all counsel of

record, including:

James W. Hundley
Robert H. Cox
Amy L. Bradley
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, VA 22182

*Counsel for Plaintiff/Counter-Defendant*
*National Rifle Association of America*

/s/ Timothy J. McEvoy
Timothy J. McEvoy (VSB No. 33277)
CAMERON/MCEVOY PLLC
4100 Monument Corner Drive, Suite 420
Fairfax, VA 22030
(703) 460-9341
tmcevoy@cameronmcevoy.com

*Counsel for Defendants/Counter-Plaintiffs*
*Lockton Affinity Series of Lockton Affinity, LLC, and*
*Kansas City Series of Lockton Companies, LLC*