**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION ) <br> OF AMERICA, ) <br> ) <br>        Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LOCKTON AFFINITY SERIES OF LOCKTON ) <br> AFFINITY, LLC, et al., ) <br> ) <br>        Defendants. ) <br> ) | Civil Action No. 1:18cv639 <br> LO/JFA |

**PLAINTIFF NATIONAL RIFLE ASSOCIATION OF AMERICA'S ANSWER TO DEFENDANTS LOCKTON AFFINITY SERIES OF LOCKTON AFFINITY, LLC AND KANSAS CITY SERIES OF LOCKTON COMPANIES, LLC'S COUNTERCLAIM**

Plaintiff National Rifle Association of America ("NRA" or "Plaintiff"), by and through its undersigned counsel, in response to the Counterclaims and Jury Demand (the "Counterclaim Complaint") of Defendants Lockton Affinity Series of Lockton Affinity, LLC ("Lockton Affinity") and Kansas City Series of Lockton Companies, LLC's ("Lockton Kansas") (together, "Lockton") states as follows:

**INTRODUCTION**

No answer is required to the introductory material included in the unnumbered paragraphs that precede the allegations in the Counterclaim Complaint. However, the NRA denies these allegations. Lockton misstates the material aspects of the parties' course of dealing in order to contrive counterclaims in a transparent effort to deflect attention from its liability to the NRA.

Unable to deny that it promised (and failed) to ensure that the insurance programs it developed and administered, complied with relevant regulations, Lockton disingenuously complains that the "enforcement priorities of regulators" shifted to target the NRA due to the

NRA's "overtly political and inflammatory approach to marketing certain of the NRA-Endorsed Insurance Programs."[1] Yet as the Complaint makes clear, Lockton reviewed and <u>approved</u> the NRA's marketing materials, including: email communications; telephonic call scripts; training videos; marketing mailers; and, website contents.[2] Thus, to the extent that any marketing materials were objectionable to regulators, Lockton had the opportunity—and the obligation—to caution the NRA accordingly. Instead, Lockton continually gave assurances like those in CEO Steve Engoire's email dated April 21, 2017: namely, that Lockton had taken "all necessary steps to make certain we maintain our compliance with state insurance regulations" and that Lockton's performance of its contractual obligations provided "insulation for the NRA."[3]

Lockton's allegations that the NRA "refused to cooperate . . . and perform its obligations . . . choosing instead to attack and advance its political agenda" also lack merit. Discovery will demonstrate that the NRA never "frustrate[ed] [Lockton's] ordinary business communications," nor took any steps that would impede Lockton's performance of its contractual obligations. Indeed, Lockton ceased to provide contractually required business communications to the NRA in late 2017, months before any of the communications cited in the Counterclaim Complaint occurred. Lockton desisted from ordinary-course communications because it decided to accede to regulators' politically motivated coercion at the expense of the NRA, and in violation of its duty to protect the NRA's interests.

The NRA does not deny that attacks from certain regulators appear to be politically motivated. However, Lockton, which holds itself out as an expert regarding the insurance needs

---

[1] *See* Answer and Counterclaim at 2.

[2] *See* Complaint ¶¶ 42-46.

[3] *See id.* ¶ 40.

of "common-cause groups" like the NRA,[4] brokered, developed, and administered insurance programs endorsed by the NRA for almost twenty years.  The conspicuous eagerness of the NRA's political enemies to exploit any colorable compliance defect does not relieve Lockton of its contractual obligation to police or insure against such defects.  Indeed, Lockton's promise to provide "insulation for [the] NRA" is made more material—and Lockton's breach of that promise, more damaging—by the political landscape in which the parties' bargains were struck.

## ANSWER TO COUNTERCLAIM COMPLAINT

1. The NRA admits the allegations contained in Paragraph 1 of the Counterclaim Complaint that Lockton Affinity is a limited liability company organized under the laws of the State of Missouri.  The NRA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and, on that basis, denies such allegations.

2. Admits.

3. Admits.

4. The allegations contained in Paragraph 4 of the Counterclaim Complaint assert a legal conclusion to which no response is required.  To the extent a response is required, the NRA admits the Court has subject matter jurisdiction over this action.

5. The allegations contained in Paragraph 5 of the Counterclaim Complaint assert a legal conclusion to which no response is required.  To the extent a response is required, the NRA admits that the NRA transacts business within the Commonwealth of Virginia, and that it has consented to personal jurisdiction in the Courts of the Commonwealth of Virginia under the terms of certain contracts at issue in this action.

---

[4] *See id.* ¶ 13.

6. The allegations contained in Paragraph 6 of the Counterclaim Complaint assert a legal conclusion to which no response is required. To the extent a response is required, the NRA admits that it has consented to venue in this judicial district based on the terms of certain contracts at issue in this action.

7. The NRA admits Lockton Affinity and the NRA are parties to the Program Agreement, which became effective January 1, 2011, and respectfully refers the Court to the Program Agreement for its complete and accurate contents. The NRA denies the remaining allegations contained in Paragraph 7 of the Counterclaim Complaint.

8. The NRA admits that prior to October 2017, it received royalty payments from Lockton Affinity based on the terms of the Program Agreement. The NRA also admits that in December 2017, the parties conducted negotiations regarding Addendum H to the Program Agreement. To the extent that the allegations in Paragraph 8 purport to characterize the Program Agreement (including any addenda thereto), the NRA respectfully refers to the Court to the Program Agreement for its complete and accurate contents. The NRA denies the remaining allegations contained in Paragraph 8 of the Counterclaim Complaint.

9. The NRA admits Lockton KC and the NRA are parties to the Management Agreement, which became effective January 1, 2011, and respectfully refers the Court to the Management Agreement for its complete and accurate contents. The NRA denies the remaining allegations contained in Paragraph 9 of the Counterclaim Complaint.

10. The NRA denies the allegations contained in Paragraph 10 of the Counterclaim Complaint.

11. The NRA denies the allegations contained in Paragraph 11 of the Counterclaim Complaint.

12. The NRA admits that in late 2016, a membership firearms training program was developed, which became known as the Carry Guard program. The NRA denies the remaining allegations contained in Paragraph 12 of the Counterclaim Complaint.

13. The NRA admits that in addition to non-insurance components, the Carry Guard program includes insurance components designed and implemented by Lockton that provide coverage through insurance policies obtained by Lockton for, among other things, costs or losses arising from accidental firearm discharge or from the lawful use of a firearm, including with respect to acts of self-defense. The NRA admits that Lockton sold four levels of insurance coverage in connection with the Carry Guard program. The NRA denies the remaining allegations contained in Paragraph 13 of the Counterclaim Complaint.

14. The NRA respectfully refers the Court to the Program Agreement and the Management Agreement for their complete and accurate contents. The NRA denies the remaining allegations contained in Paragraph 14 of the Counterclaim Complaint.

15. The NRA denies the allegations contained in Paragraph 15 of the Counterclaim Complaint.

16. The NRA admits Ackerman McQueen is a professional advertising and media company that provides services to the NRA. The NRA denies the remaining allegations contained in Paragraph 16 of the Counterclaim Complaint.

17. The NRA admits that it engages in efforts to raise money, recruit members, and advance the rights of all Americans under the Second Amendment of the United States Constitution. The NRA denies the remaining allegations contained in Paragraph 17 of the Counterclaim Complaint.

18. The NRA admits that it incurs expenditures relating to digital advertising. The NRA denies the remaining allegations contained in Paragraph 18 of the Counterclaim Complaint.

19. The NRA admits that it receives funds from donors, and that certain media outlets have published claims regarding the volume of donations received by the NRA and its affiliates at various times. The NRA respectfully refers the Court to such media reports for the complete and accurate contents thereof. The NRA denies the remaining allegations contained in Paragraph 19 of the Counterclaim Complaint.

20. The NRA admits that a membership drive was announced in April 2018. The NRA denies the remaining allegations in Paragraph 20 of the Counterclaim Complaint.

21. The NRA admits that it publishes, at various times, statements regarding the approximate number of NRA members. The NRA denies the remaining allegations contained in Paragraph 21 of the Counterclaim Complaint.

22. The NRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Counterclaim Complaint regarding whether Lockton is "apolitical" or takes a position regarding the political views of its clients or regulators, and on that basis denies such allegations. The NRA denies the remaining allegations contained in Paragraph 22 of the Counterclaim Complaint.

23. The NRA denies the allegations contained in Paragraph 23 of the Counterclaim Complaint.

24. The NRA denies the allegations contained in Paragraph 24 of the Counterclaim Complaint.

25. The NRA admits that it met with Lockton representatives in January 2018. The NRA denies the remaining allegations contained in Paragraph 25 of the Counterclaim Complaint.

26. The NRA denies the allegations contained in Paragraph 26 of the Counterclaim Complaint.

27. The NRA denies the allegations contained in Paragraph 27 of the Counterclaim Complaint.

28. The NRA admits that counsel for Lockton sent a letter, dated May 10, 2018, to counsel for the NRA. The Court is respectfully referred to that correspondence for its complete and accurate contents. The NRA denies the remaining allegations contained in Paragraph 28 of the Counterclaim Complaint.

29. The NRA admits that counsel for Lockton sent letters, dated May 15 and 16, 2018, to counsel for the NRA, and the Court is respectfully referred to that correspondence for its complete and accurate contents, as well as to the correspondence sent by the NRA to Lockton, dated May 15, 2018, stating that: (1) Lockton had not identified any ordinary-course business communications unaddressed by the NRA; (2) Lockton and NRA representatives are, and have been, free to communicate regarding day-to-day logistical and business questions; and (3) Lockton ceased to provide certain contractually required business communications to the NRA. The NRA denies the remaining allegations contained in Paragraph 29 of the Counterclaim Complaint.

30. The NRA admits that counsel for Lockton sent a letter, dated May 25, 2018, to counsel for the NRA, and the Court is respectfully referred to the correspondence for its complete and accurate contents. The NRA denies the remaining allegations contained in Paragraph 30 of the Counterclaim Complaint.

31. The NRA denies the allegations contained in Paragraph 31 of the Counterclaim Complaint.

32. The NRA admits that by letter dated May 9, 2018, the NRA requested Lockton to allow access to documents, books, and records in accordance with its rights pursuant to Section I.G.9 of the Program Agreement and Section I.E.9. of the Management Agreement, each of which obligate Lockton to allow inspection of such materials at all reasonable times, specifically defined as Monday through Saturday, 8:00 A.M. to 6:00 P.M.  The NRA denies the remaining allegations contained in Paragraph 32 of the Counterclaim Complaint.

33. The NRA denies the allegations contained in Paragraph 33 of the Counterclaim Complaint.

34. The NRA denies the allegations contained in Paragraph 34 of the Counterclaim Complaint.

35. The NRA denies the allegations contained in Paragraph 35 of the Counterclaim Complaint.

36. The NRA admits that counsel for Lockton sent a letter, dated June 7, 2018, to counsel for the NRA, and respectfully refers the Court to the parties' correspondence for its complete and accurate contents.  The NRA denies the remaining allegations contained in Paragraph 36 of the Counterclaim Complaint.

37. The NRA denies the allegations contained in Paragraph 37 of the Counterclaim Complaint.

38. The NRA re-asserts, and incorporates by reference, its responses to Paragraphs 1 through 37 of the Counterclaim Complaint, as if fully set forth herein.

39. The allegations contained in Paragraph 39 of the Counterclaim Complaint assert a legal conclusion to which no response is required.  To the extent a response is required, the NRA admits that the NRA and Lockton entered into enforceable agreements.

40. The allegations contained in Paragraph 40 of the Counterclaim Complaint assert a legal conclusion to which no response is required. To the extent a response is required, the NRA denies the allegations contained in Paragraph 40 of the Counterclaim Complaint.

41. The NRA denies the allegations contained in Paragraph 41 of the Counterclaim Complaint.

42. The NRA denies the allegations contained in Paragraph 42 of the Counterclaim Complaint.

43. The NRA denies the allegations contained in Paragraph 43 of the Counterclaim Complaint.

44. The NRA denies the allegations contained in Paragraph 44 of the Counterclaim Complaint.

45. The NRA re-asserts, and incorporates by reference, its responses to Paragraphs 1 through 44 of the Counterclaim Complaint, as if fully set forth herein.

46. The allegations contained in Paragraph 46 of the Counterclaim Complaint assert a legal conclusion to which no response is required. To the extent a response is required, the NRA admits that the NRA and Lockton entered the Program Agreement as an enforceable agreement.

47. The NRA respectfully refers the Court to the Program Agreement for its complete and accurate contents. The NRA denies the remaining allegations contained in Paragraph 47 of the Counterclaim Complaint.

48. The NRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 48 of the Counterclaim Complaint and, on that basis, denies such allegations. The NRA denies the remaining allegations contained in Paragraph 48 of the Counterclaim Complaint.

49. The allegations contained in Paragraph 49 of the Counterclaim Complaint assert a legal conclusion to which no response is required. To the extent a response is required, the NRA denies the allegations contained in Paragraph 49 of the Counterclaim Complaint.

50. The NRA denies the allegations contained in Paragraph 50 of the Counterclaim Complaint.

51. The NRA denies the allegations contained in Paragraph 51 of the Counterclaim Complaint.

52. The allegations contained in Paragraph 52 of the Counterclaim Complaint state a legal conclusion to which no response is required. To the extent a response is required, the NRA denies the allegations contained in Paragraph 52 of the Counterclaim Complaint.

## GENERAL DENIAL

The NRA denies all allegations in the Counterclaim Complaint not expressly admitted above. The NRA further denies that Lockton is entitled to judgment in its favor or any relief, including the relief requested by Lockton in the Counterclaim Complaint.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any issue that would otherwise rest upon Lockton, the NRA asserts the following affirmative defenses:

### FIRST DEFENSE

Lockton's Counterclaim Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Lockton's claims are barred, in whole or in part, because NRA has performed its obligations and did not breach any obligation or covenant of good faith and fair dealing implied in the Agreements.

### THIRD DEFENSE

Lockton's claims are barred, in whole or in part, because NRA has performed under the Agreements at all times in good faith.

### FOURTH DEFENSE

Lockton's claims are barred, in whole or in part, based on prior material breach because Lockton materially breached or otherwise failed to perform its own duties and obligations under the Agreements.

### FIFTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton breached the implied covenant of good faith and fair dealing under the Agreements.

### SIXTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton is pursuing this litigation in bad faith and for an improper purpose.

### SEVENTH DEFENSE

Lockton's claims are barred, in whole or in part, by the doctrine of unclean hands.

### EIGHTH DEFENSE

Lockton's claims are barred, in whole or in part, by the doctrines of estoppel, waiver, and other equitable doctrines.

### NINTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton has not suffered any damages.

## TENTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton's alleged damages, if such damages exist, were not caused by the NRA.

## ELEVENTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton's alleged damages, if such damages exist, were caused or contributed to by Lockton's own actions and conduct, the conduct of its agents or employees, and/or the conduct of third parties over which the NRA has no responsibility or control.

## TWELFTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton's alleged damages are too speculative and too remote.

## THIRTEENTH DEFENSE

Lockton's claims are barred, in whole or in part, because the damages that Lockton seeks, if awarded, would result in unjust enrichment of Lockton.

## FOURTEENTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton repudiated the Agreements and thereby discharged the NRA's duties thereunder.

## FIFTEENTH DEFENSE

Lockton's claims are barred, in whole or in part, because they are based on facts or legal theories that are contrary to the plain meaning of the Agreements and their applicable terms.

## SIXTEENTH DEFENSE

Lockton's claims are barred, in whole or in part, because Lockton's own actions frustrated or otherwise prevented the NRA's performance of any obligation underlying Lockton's claims.

Dated:  July 10, 2018                    Respectfully submitted,

                /s/  Robert H. Cox
James W. Hundley (VA Bar No. 30723)
Robert H. Cox (VA Bar No. 33118)
Amy L. Bradley (VA Bar No. 80155)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, VA  22182
jhundley@brigliahundley.com
rcox@brigliahundley.com
abradley@brigliahundley.com
Phone:  703-883-0880
Fax:  703-883-0899


William A. Brewer III (Admitted *Pro Hac Vice*)
Michael L. Smith (Admitted *Pro Hac Vice*)
Sarah B. Rogers (Admitted *Pro Hac Vice*)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, Floor 14
New York, New York 10022
wab@brewerattorneys.com
mls@brewerattorneys.com
sbr@brewerattorneys.com
Phone:  (212) 489-1400
Fax:  (212) 751-2849

*ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA*

**CERTIFICATE OF SERVICE**

       I hereby certify that on July 10, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                       /s/ Robert H. Cox
                              James W. Hundley (VA Bar No. 30723)
                              Robert H. Cox (VA Bar No. 33118)
                              Amy L. Bradley (VA Bar No. 80155)
                              BRIGLIA HUNDLEY, P.C.
                              1921 Gallows Road, Suite 750
                              Tysons Corner, VA 22182
                              jhundley@brigliahundley.com
                              rcox@brigliahundley.com
                              abradley@brigliahundley.com
                              Phone: 703-883-0880
                              Fax: 703-883-0899

                              *ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA*