```
                                                                    1
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




--------------------------------:
                                :
NATIONAL RIFLE ASSOCIATION       :
OF AMERICA,                      :
               Plaintiff,        :
                                 :
     -vs-                        :         Case No. 1:18-cv-639
                                 :
                                 :
LOCKTON AFFINITY SERIES OF       :
LOCKTON AFFINITY, LLC, et al.,   :
               Defendants.       :
                                 :
--------------------------------:




                    HEARING ON PRO HAC VICE MATTERS

                         September 13, 2018

                  Before:  Liam O'Grady, USDC Judge




APPEARANCES:

James W. Hundley, Robert H. Cox, and William A. Brewer, III,
Counsel for the Plaintiff

Bernard J. DiMuro and Stacey R. Harris, Counsel for Mr. Brewer




                                   Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626
```

2

1        THE CLERK:  The Court calls case 1:18-cv-639,
2    National Rifle Association of America versus Lockton Affinity
3    Series of Lockton Affinity, LLC, et al.
4        May I have the appearances, please, first for the
5    plaintiff.
6        MR. HUNDLEY:  Good morning, Your Honor.  Jim Hundley
7    here on behalf of the National Rifle Association.  With me is
8    Bob Cox, also counsel for the National Rifle Association.
9        Also present is Bill Brewer, who has been admitted in
10   the case on a pro hac vice matter which is under further review
11   today.
12       THE COURT:  All right, good morning.
13       MR. HUNDLEY:  Good morning, Your Honor.
14       MR. COX:  Good morning, Your Honor.
15       MR. DiMURO:  Good morning, Your Honor.  Ben DiMuro
16   and Stacey Rose Harris appearing specially on behalf of Mr.
17   Brewer.
18       And I also note that John Frazier, general counsel to
19   the NRA, is present in the courtroom.  He is an admitted member
20   of the Bar.  I just wanted to note his appearance.
21       THE COURT:  All right.  Good morning to each of you.
22       All right.  I ordered this hearing in response to
23   information received about Mr. Brewer's findings in Texas
24   against him, a finding by a trial judge and then a Court of
25   Appeals that he had acted unethically and in bad faith in a

1  prior litigation.

2  And as we all know, the pro hac vice statement
3  requires an applicant to state that "I have not been
4  reprimanded in any court, nor has there been any action in any
5  court pertaining to my conduct or fitness as a member of the
6  Bar."

7  And in reviewing the District Court and the Appellate
8  Court's written orders, I found it necessary to have our
9  hearing today.

10  I would also note that Mr. Cox in vouching for Mr.
11  Brewer's good standing stated that, as a member of the court,
12  that he knew the applicant personally, said that the applicant
13  possessed all the qualifications required for admission to the
14  Bar of this court, "that I have examined the applicant's
15  personal statement.  I affirm that his personal and
16  professional character and standing are good, and petition the
17  court to admit the applicant pro hac vice."  And that certainly
18  is an area that I believe deserves some attention this morning
19  as well.

20  So let's discuss Mr. Brewer first.  Mr. DiMuro,
21  what's Mr. Brewer's position on the accuracy of the statement
22  that he signed?

23  MR. DiMURO:  We would -- I don't know how you want to
24  proceed, but Mr. Brewer is prepared to explain to the Court his
25  thought processes and why he signed it.  And he can do it at

1  the podium.  I might have a few additional questions for him
2  that is more appropriate for a give and take, and then a
3  handful of exhibits.
4          THE COURT:  All right.
5          MR. DiMURO:  But I will go ahead and have Mr. Brewer
6  explain himself.
7          THE COURT:  Sure.  Mr. Brewer, please come to the
8  podium, sir.
9          MR. BREWER:  Good morning, Your Honor.  Thank you for
10  the opportunity to address the Court.  I am sorry to be a
11  burden to the Court on this.
12          The matter that the Court referred to is on appeal to
13  the Texas Supreme Court.  It was my thinking when I filled out
14  the application that -- and by the way, thank you for admitting
15  me provisionally to appear before you as a representative and
16  advocate for the NRA.
17          But it was my thinking when I filled that application
18  out that it was -- didn't refer to pending matters, but frankly
19  to final matters.  Because I know that the matter is not final
20  because it is on appeal.  And, frankly, since then I have been
21  encouraged that the Supreme Court has done what courts -- what
22  I believed strongly the court would do, not only grant a
23  hearing on it, but actually set it down for oral argument.
24  Because I felt strongly that it was important for me to pursue
25  that matter.

1     But because it was not a final matter, I didn't think
2  it was called for.  Now, obviously, no advocate -- and I have
3  been -- had the pleasure to be an advocate for clients for
4  38 years now.  No advocate, no one in my firm ever hears me say
5  anything other than that it is privilege to appear in a court
6  like this on behalf of a client.  I take very seriously my
7  responsibilities as an officer of the court.
8     And so, candor is the issue of the day, and my
9  opportunity to convince you that I will be candid and deserve
10 the privilege to appear in your court.  I can tell you that it
11 was no attempt on my part to --
12     THE COURT:  Well, did you not read the statement?
13     MR. BREWER:  I did read it.  I did read it, Your
14 Honor.  I thought it referred to -- what I thought was called
15 for was final --
16     THE COURT:  "Nor has there been any action in any
17 court pertaining to my conduct or fitness as a member of the
18 Bar."
19     How could you read that any other way than requiring
20 you to notify the court if there had been any action in any
21 court?
22     MR. BREWER:  Your Honor, looking back on it now, and
23 I can tell perhaps I made a mistake, but I regularly fill out
24 applications for pro hac admission in other courts.  I been
25 instructed by my counsel, my appellate counsel, to be careful

6

1  about the fact that this was a non-final or suspended matter
2  while it was on appeal.
3          In fact, I have filled out other pro hacs in other
4  courts where they requested information about any pending
5  matters, and disclosed the existence of the situation in
6  Lubbock.
7          THE COURT: This was meant to be even broader to make
8  sure that it captures any action in any court.
9          MR. BREWER: Your Honor, I honestly -- candor is the
10 issue of the day, and to be -- you have asked me the most
11 important question, what was I thinking when I filled it out.
12 Clearly, no -- it's a very celebrated, high-profile matter back
13 in Texas. Any amount of search around me would reveal that
14 it's quite celebrated, as is the fact now that the Supreme
15 Court has accepted argument on it.
16         The fact is, it was certainly no attempt on my part
17 to mislead. I simply thought, given that it was inquiring into
18 any reprimand, well, I haven't been reprimanded. There is
19 pending an order of a court from a District Court, Judge Reyes
20 out of Lubbock, that is being reviewed and was in the appellate
21 process.
22         So, candidly, I wish I had a more satisfactory
23 answer. Frankly, I wish I had filled it out separately, done
24 something different because no one wants to be at the podium
25 making this explanation as I am doing today, Your Honor.

1                But life is a growing, learning process, as we tell
2    our children.  Right?  And I wish I could hit the button, go
3    back, rethink it.  But at the time, to be completely candid
4    with Your Honor, as I will always be in your court, I thought
5    it didn't -- as I told Your Honor, in other applications for
6    pro hac admission where it said "pending matters," I disclosed
7    it, I have disclosed it.
8                But in this matter I thought it was referring to a
9    reprimand.  Well, I haven't been reprimanded.  In fact, the
10   reprimand has been suspended while it's on appeal.
11               And so, that was my thinking when I filled it out.
12               THE COURT:  Okay.  Did you tell Mr. Cox about the
13   action by Judge Reyes or the Appeals Court?
14               MR. BREWER:  I did not.
15               THE COURT:  Okay. All right.  Thank you, sir.
16               MR. DiMURO:  May I just ask a few questions, Your
17   Honor?
18               THE COURT:  Yes, go ahead, Mr. DiMuro.
19               MR. BREWER:  Your Honor, should I stand here you or
20   go to my chair --
21               THE COURT:  You can go -- well, no, I need to make
22   sure we get your answers on the recorder.  So please stay
23   there.
24               MR. DiMURO:  I will be quick, Your Honor.
25               In Texas, the Supreme Court does not have -- it is

8

```
 1  not a mandatory appeal to the Supreme Court; is that correct?
 2              MR. BREWER:  It is not.
 3              MR. DiMURO:  Is it discretionary to the Supreme Court
 4  to accept an appeal?
 5              MR. BREWER:  Yes, it is.
 6              MR. DiMURO:  Exhibit 1, is that the letter from the
 7  Supreme Court noting that they are taking the appeal and they
 8  want briefing on the merits?
 9              MR. BREWER:  Yes, it is.
10              MR. DiMURO:  And this is the appeal from Judge Reyes'
11  decision, right?
12              THE COURT:  From the Appellate Court?
13              MR. DiMURO:  Yes, sir.  Is that right?
14              MR. BREWER:  Yes, it is.
15              MR. DiMURO:  All right.  Did you apply for pro hac
16  vice admission in the Circuit Court of the First Circuit for
17  the State of Hawaii in or about May of 2017?
18              MR. BREWER:  Yes, I did.
19              MR. DiMURO:  Is that Exhibit 2?
20              MR. BREWER:  Exhibit 2 is that application.
21              MR. DiMURO:  What does it disclose about the Lubbock
22  decision?
23              MR. BREWER:  It discloses that there is a pending
24  matter related to Lubbock.
25              MR. DiMURO:  And is your affidavit attached to your
```

9

1 local counsel's petition?

2     MR. BREWER:  That is my affidavit.

3     MR. DiMURO:  And paragraph 6 of your affidavit to the
4 court of Hawaii, would you read paragraph 6, please.

5     MR. BREWER:  "I have never been disciplined by any
6 jurisdiction in which I am admitted to practice.  I am
7 currently the subject of a grievance filed with the State Bar
8 of Texas.  The grievance was filed by a party to a lawsuit in
9 which I represented the opposing party.  The grievance
10 proceeding is stayed pending the outcome of judicial
11 proceedings."

12     MR. DiMURO:  Is Exhibit 3 the rules of the Hawaii
13 court system for purposes of disclosing -- making disclosures
14 for pro hac vice issues?

15     MR. BREWER:  Yes, it is.

16     MR. DiMURO:  And what disclosure did they require and
17 what you were answering by way of Exhibit 2?

18     MR. BREWER:  Well, (c), (2)(c) I believe it is, "any
19 and all disciplinary proceedings in which the applicant was
20 disciplined, any pending disciplinary proceedings against the
21 applicant, or a statement, if applicable, that the applicant
22 has never been the subject of any disciplinary proceeding."

23     MR. DiMURO:  Okay.  Did the court in Hawaii ask for
24 further disclosure on the Lubbock issue or that grievance?

25     MR. BREWER:  Yes, the court did.

1    MR. DiMURO: And is Exhibit 4 the supplemental
2 submission?
3    MR. BREWER: Yes, it is.
4    MR. DiMURO: Does Exhibit 4 contain your supplemental
5 declaration concerning the Lubbock decision?
6    MR. BREWER: Yes, it does.
7    MR. DiMURO: All right. And did the court ultimately
8 grant your pro hac vice request in Hawaii?
9    MR. BREWER: Yes, the court did.
10    MR. DiMURO: And is that Exhibit 5?
11    MR. BREWER: Yes, Exhibit 5 is the order granting the
12 admission.
13    MR. DiMURO: And to your knowledge, are all these
14 exhibits, 2 through 5, public records in the State of Hawaii?
15    MR. BREWER: Yes, they are.
16    MR. DiMURO: Do you have any reason not to disclose
17 and keep secret the Lubbock decision?
18    MR. BREWER: No.
19    MR. DiMURO: You represent the NRA in this matter.
20 Do you represent them in other matters?
21    MR. BREWER: Yes, I do.
22    MR. DiMURO: This matter, I believe, procedurally is
23 somewhere in the middle of discovery?
24    MR. BREWER: Yes, this matter is in discovery, Your
25 Honor.

11

1    MR. DiMURO:  And the client would request that you
2 remain as counsel of record?
3    MR. BREWER:  Yes.
4    MR. DiMURO:  What assurances can you give the Court
5 in terms of your efforts to be candid in ongoing proceedings?
6    MR. BREWER:  Your Honor, as I have already stated to
7 you, this is bad day, one that I have not had before in
8 38 years, and I sorely want to avoid ever again.
9    I take very seriously, as does every lawyer and
10 professional who works in my law firm, the admonition to be
11 honorable, candid, and completely accurate with our client's
12 business as we are advocates in courts.
13    I was very pleased and looking forward to appearing
14 as an advocate for the NRA in your court, was pleased when you
15 granted my pro hac application, and hope you will take my words
16 sincerely that I very much take seriously my obligation to the
17 court as an officer of the court.
18    THE COURT:  All right.  Thank you, sir.
19    Mr. DiMuro, anything further?
20    MR. DiMURO:  No, sir.
21    THE COURT:  All right.  Have a seat.
22    Mr. Cox --
23    MR. COX:  Yes, Your Honor.
24    THE COURT:  What investigation did you do before you
25 signed this pro hac vice admission?  Did you do anything that

1  you were required to do in the written statement?

2         MR. COX:  Yes, Your Honor.  I would like to start,
3  just by way of introduction or background, this is the first
4  time that I have been counsel for the NRA and the first time
5  that I have worked with the Brewer firm, and I did submit a
6  responsive document pleading a couple days ago.

7         So, Your Honor, when I first was -- had been retained
8  in this matter, I did forward on the Local Rules of this court
9  on to the Brewer firm, on to my contact there in terms of when
10 I received them and advised them that lawyers at the firm
11 needed to review the Local Rules before submitting a pro hac
12 vice application.

13        In terms of what I did in terms of an investigation
14 before I submitted the original application, I had reviewed the
15 Web site of the Brewer firm, looked at Mr. Brewer's bio, looked
16 at his court admissions.

17        I had one conversation with a partner of Mr. Brewer's
18 in which I had received his application and then that specific
19 partner's.  I asked whether there were any issues, and was
20 advised there were.

21        And then I reviewed Mr. Brewer's statement and
22 affirmation, examined that, and also the listing of all of his
23 court admissions that is submitted on the back of the pro hac
24 vice application.

25        So that's the extent of the investigation that I did,

1  Your Honor.  And then the first time I learned of the existence
2  of this disciplinary proceeding was a few hours before the
3  Court issued its ruling on August 14.
4          THE COURT:  I notice on -- so you didn't uncover
5  anything about the Texas ethics probe?
6          MR. COX:  No, I didn't, Your Honor.  But I wasn't
7  specifically searching for it, I wasn't aware of it's
8  existence.
9          THE COURT:  And you didn't have any conversation with
10 Mr. Brewer personally prior to signing the form?
11         MR. COX:  No, I didn't, Your Honor.  I talked to one
12 of -- a couple of his partners.
13         THE COURT:  All right.  Thank you, Mr. Cox.
14         All right.  Anything else?
15         MR. DiMURO:  Nothing else, Your Honor.  I would have
16 a few remarks.
17         THE COURT:  Go ahead.
18         MR. DiMURO:  Thank you.  Well, my remarks probably
19 can't rise any higher than how you take Mr. Brewer's comments.
20 I believe he's been quite candid with Your Honor this morning
21 about his thought process.  Whether or not it was flawed at the
22 time of signing it is for Your Honor's consideration.
23         However, I don't think he was in bad faith or had a
24 specific intent to mislead the Court.  The Lubbock decision, as
25 he has testified, is generally known.  I suspect there are

14

1  members of the press here.  In fact, I know of at least one
2  e-mail inquiry by a member of the press.  So it's a high
3  profile matter.  And as I have shown you -- and I would move
4  Exhibits 1 through 5 into evidence.
5         THE COURT:  Yes, they will be admitted.
6         MR. DiMURO:  Thank you.  As those exhibits show, it
7  was openly disclosed in a Hawaii case where the question was
8  very specific about pending disciplinary procedures.
9         I was surprised to find that there is actually a
10 decision out of the District Court of South Carolina quoting
11 Fourth Circuit law on pro hac vice admissions.  I had never run
12 across that.  It's <u>In re Ronald Jefferson Davis, Debtor</u>.  It's
13 a bankruptcy decision, 2012 WL3782548.
14        May I pass it up, Your Honor?
15        THE COURT:  I have it.  It's an order on motion to
16 revoke pro hac vice admission.
17        MR. DiMURO:  Then I will save you from pointing out
18 the pertinent language.  Maybe I shouldn't have been so
19 surprised to see the decision.
20        THE COURT:  Well, it's a little different.  It's not
21 on all fours with us here, but it is as close as I could find
22 as well.
23        MR. DiMURO:  Yes, sir.  The case is in the middle of
24 proceedings.  I don't know what level of discovery has been
25 undertaken.  But the NRA is here, I think Mr. Frazier would

1  confirm they would prefer to have Mr. Brewer and his firm stay
2  on as lead counsel in this matter.
3          And as the Davis case suggests, if revocation is
4  within the realm of possibility, it should be analyzed under
5  the rules for disqualifying actual members of the Bar.  And
6  those standards are actual conflicts or misuse of confidential
7  information, or something that goes -- things that go to the
8  integrity of the system.
9          Mr. Brewer has an unblemished career disciplinary-
10 wise otherwise.  And we would ask that Your Honor consider the
11 fact of his comments, his candor, his sincere efforts to
12 explain what happened.  And he could have diverted it to
13 somebody else who may have filled out the form or said it's
14 okay.  He didn't do that.  He certainly hasn't done anything in
15 this court in terms of discovery or litigation efforts that
16 should cause the Court any concern.
17         And absent any bad faith or intentional misconduct, I
18 would ask you to consider actually the real cost in terms of
19 time, money, anxiety, emotion, attorney's fees to get to this
20 point as exacting a just and fair resolution of this matter.
21         Thank you.
22         THE COURT:  All right.  Well, I think the language is
23 very clear and requires that any action in any court pertaining
24 to conduct or fitness as a member of the Bar has to be
25 identified.  And it wasn't here.

1          So, Mr. DiMuro, when you talk about the conduct and
2   the consideration the Court gives to admitting an attorney from
3   a different jurisdiction, I agree with you, you're looking at
4   fitness, the reasons why you would admit or you wouldn't admit
5   foreign attorneys into our court here.
6          And issues that go to the core of whether somebody
7   should be admitted were all addressed in the -- not only Judge
8   Reyes' decision, but explicitly in the Court of Appeals' three
9   judge opinion that was handed down on March 26 of 2018.
10         And Mr. Brewer has been very candid this morning.
11  Obviously, Judge Reyes didn't find that he was being candid
12  with the Court in the hearings back in 2016 and indicated that
13  he was anything but.  But, you know, that may have been just an
14  attorney and judge got sideways, and that happens.
15         But the Court of Appeals went on to affirm the
16  findings of Judge Reyes that Mr. Brewer's actions were not a
17  negligent act, or a mistake, or the result of poor judgment,
18  but they were in bad faith, unprofessional, and unethical,
19  highly prejudicial to the fair trial of an impartial jury.
20         And, of course, we're talking about this push poll
21  that Mr. Brewer admitted he had reviewed and approved before it
22  was used by the polling company.
23         Disrespectful to the judicial system.  Threatening
24  the integrity of the judicial system.  Incompatible with a fair
25  trial.  The poll was designed to improperly influence the jury

1 pool. And that the conduct impacted the right of a trial by
2 impartial jurors. And that it was intentional and in bad
3 faith.
4 And that the quote, "it is undisputed that the trial
5 Court's ability to impanel an impartial jury and to try a case
6 before unintimidated witnesses are core functions of the
7 Court."
8 Had I known about these opinions, notwithstanding
9 that there is further appeals ongoing, I wouldn't have signed
10 the pro hac vice form and would not have admitted Mr. Brewer to
11 the Eastern District of Virginia.
12 They are very serious allegations. They are findings
13 of bad faith that go to the core of a fair and impartial
14 rendering of a jury verdict.
15 And now having reviewed them -- and I realize that
16 the NRA will be inconvenienced and, if necessary, there might
17 have to be some adjustment to the discovery process ongoing,
18 but I find that Mr. Brewer's pro hac vice admission should be
19 revoked and that he should not be admitted to proceed further
20 in this case.
21 I'm concerned about -- was concerned about Mr. Cox's
22 signature, but I find that he was unaware of the pending -- of
23 the findings of the ethical misconduct in Texas. That he had
24 done a reasonable inquiry. And that it was up to Mr. Brewer or
25 his firm members to convey to Mr. Cox the pending matter.

```
                                                                  18
 1          So I am going to issue an order revoking your pro hac
 2   vice, sir.
 3          All right.  Thank you, counsel.
 4          MR. COX:  Thank you, Your Honor.
 5          MR. DiMURO:  Thank you, Your Honor.
 6       ---------------------------------------------
                           HEARING CONCLUDED
 7
 8
 9
10
11
12
13
14
15
16
17
18
19          I certify that the foregoing is a true and
20   accurate transcription of my stenographic notes.
21
22
23
                         _____
                            /s/   Norman B. Linnell
24                       Norman B. Linnell, RPR, CM, VCE, FCRR
25
```