IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> LOCKTON AFFINITY SERIES OF LOCKTON AFFINITY, LLC, and KANSAS CITY SERIES OF LOCKTON COMPANIES, LLC, <br><br> Defendants/Counter-Plaintiffs. | Civil Action No.  1:18-cv-00639-LO-JFA <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF NRA'S MOTION FOR THE ISSUANCE OF A LETTER OF REQUEST FOR THE PRODUCTION OF DOCUMENTS UNDER THE HAGUE CONVENTION ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

Plaintiff/Counter-Defendant National Rifle Association of America states in support of its motion for issuance of a letter of request for international judicial assistance under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters as follows:

**BACKGROUND**

A.   **Lockton's Contractual Commitments Extended to its Dealings with Lloyd's.**

In January 2011, Lockton entered into an agreement with the NRA to "create, introduce, market, offer, deliver, manage, maintain and administer in all respects" NRA affinity-insurance programs.[1]  Under the Amended and Restated Insurance Program Agreement between Lockton Risk Services, Inc., and National Rifle Association of America, Lockton promised to "work with

---

[1] Amended and Restated Insurance Program Agreement between Lockton Risk Services, Inc., and National Rifle Association of America, § I.A.1.

approved carriers and insurers to establish rate structures and premiums for insurance programs and coverages implemented in the Program," and to "negotiate the terms and conditions of any primary insurance and any reinsurance."[2]  Lockton did not underwrite the policies constituting the insurance program and instead enlisted underwriters, including Lloyd's of London, a syndicate of insurance underwriters based in the United Kingdom, to underwrite policies as provided in the Program Agreement.[3]

The Program Agreement imposes a number of obligations on Lockton to protect the NRA's interests as its broker in dealings with Lloyd's and other third-party underwriters.  The Program Agreement requires Lockton to "faithfully execute its responsibilities to [the NRA] when dealing with all other persons or entities involved in the Program."[4]  It also requires Lockton "to use its best efforts to obtain from all insurance companies . . . an agreement for the indemnification of [the NRA.]"[5]  The Program Agreement also requires Lockton to "implement the Program with the insurance companies," and, in so doing, to "take all reasonable measures to ensure that all aspects of the Program are in compliance with all applicable law and regulation."[6]  In this respect, Lockton "represent[ed] and warrant[ed] that it is an expert in such matters."[7]

**B.      Lockton's Breaches Implicated its Dealings with Lloyd's.**

Despite Lockton's professed expertise and many unqualified representations to protect the NRA's interests and ensure the affinity-insurance programs complied with applicable laws

---

[2] *Id.* § I.A.1.

[3] *Id.*

[4] *Id.* § I.D.2.

[5] *Id*. § I.F.3.

[6] *Id.* §§ I.G.1; I.G.5.

[7] *Id.*

and regulations, it allowed at least one underwriter, Chubb, to violate applicable law and thereby, among other acts, breached its contractual and fiduciary duties to the NRA.  In October 2017, the New York Department of Financial Services launched a broad-reaching investigation into one of the affinity-insurance programs, which investigation (still ongoing) has so far concluded that both Lockton and Chubb violated New York insurance law in connection with the programs.[8]  The NRA does not know whether the DFS is also investigating Lloyd's related to the NRA affinity-insurance programs that it underwrote.  But days after the DFS announced its findings against Lockton and Chubb, on May 9, 2018, Lloyd's announced its board of directors had directed its syndicates to terminate existing NRA insurance programs and decline all future related programs.[9]

### C.     Lloyd's Possesses Documents Critical to Testing the Veracity of Claims and Defenses in this Litigation.

Once the full scope of Lockton's compliance and contractual lapses became clear, the NRA swiftly moved to control and remediate the damage by exercising its rights to examine Lockton's insurance-program-related documents, including its communications with underwriters, but Lockton refused to provide them.  The Program Agreement provides that "all documents, books and records of [Lockton] pertaining to the [NRA], Members or [the insurance] Program . . . shall be open for inspection by [the NRA] or its designee, at all reasonable times."[10]  When the NRA learned that Lloyd's would refuse to underwrite NRA-related policies in the future, and

---

[8] *Matter of Lockton Affinity, LLC*, Consent Order (Ny. Dep't of Fin. Svcs. May 2, 2018), ¶¶ 34–40; *Matter of Chubb Group Holdings Inc.*, Consent Order (Ny. Dep't of Fin. Svcs. May 7, 2018), ¶¶ 18, 19.

[9] *Lloyd's Withdraws from National Rifle Association (NRA) Programmes*, LLOYD'S (May 9, 2018), https://www.lloyds.com/news-and-risk-insight/news/lloyds-news/2018/05/nra-statement.

[10] Program Agreement § I.G.9.

that Lockton had not obtained from Lloyd's an agreement to indemnify the NRA, the NRA asserted its contractual records-inspection rights.[11]  Notwithstanding the NRA's broad inspection rights, however, Lockton refused to grant the NRA access to communications with Lloyd's concerning:  (1) requests by Lockton that Lloyd's agree to indemnify the NRA, and (2) discussions or decisions by Lloyd's and other underwriters about terminating or not renewing NRA-related insurance policies.

In discovery in this litigation, the NRA again sought Lloyd's-related documents from Lockton, and Lockton has provided some of its communications with Lloyd's, but this production comprises only Lockton's *own* copies of Lockton's *own* communications with Lloyd's.  Counsel for the NRA has confirmed with counsel for Lockton that Lockton has not collected documents from Lloyd's to produce to the NRA.  Accordingly, Lloyd's copies of those communications, Lloyd's internal communications and other documents relating to the NRA, and any Lloyd's communications with state regulators are not included in Lockton's production (except insofar as Lloyd's may have transmitted these documents to Lockton).

Documents reflecting Lockton's communications with Lloyd's, and Lloyd's communications, if any, with U.S. state regulators regarding the NRA, would go to the heart of one of Lockton's breaches giving rise to the NRA's breach-of-contract claims and would test the veracity of Lockton's discovery responses.  Accordingly, they are the proper subject of a request for judicial assistance.

---

[11] Mar. 30, Apr. 16, and Apr. 19, 2018, letters from W. Brewer to T. Rangwala; May 17, 2018 letter from T. Rangwala to W. Brewer.

# ARGUMENT

## I. The Court has Authority to Issue the Letter of Request.

The United States and the United Kingdom are signatories to the Hague Convention of March 18, 1970, on the Taking of Evidence Abroad in Civil or Commercial Matters.[12] Since the Hague Evidence Convention is a treaty ratified and acceded to by the United States, it is the law of the land with the same force and effect as a federal statute.[13] Accordingly, the United States District Court for the Eastern District of Virginia has authority to transmit a letter of request for the production of documents to a central authority in the United Kingdom.[14]

Moreover, issuance of a letter of request is appropriate because the documents the NRA is requesting evidence dealings between Lockton and Lloyd's related to the insurance program. The substance of these dealings is dispositive on the issue of whether Lockton performed under the Agreements by: (a) ensuring Lloyd's acted in compliance with applicable laws and regulations; (b) acting to secure indemnification agreements from Lloyd's; (c) addressing the DFS's inquiry in a manner that protected the insurance program and the NRA's interest; and (d) permitting the NRA's inspection of certain communications with Lloyd's per the terms of the Program Agreement. These questions of fact are relevant to the NRA's breach claim as described above,

---

[12] Hague Evidence Convention Art 42, March 18, 1970, 23 U.S.T. 2555.

[13] *See Societe Nat'l Industrielle Aerospatiale v. U.S. Dist. Ct. for the Southern Dist. of Iowa*, 482 U.S. 522, 533 (1987) ("[B]oth the Federal Rules of Civil Procedure and the Hague Convention are the law of the United States.").

[14] Hague Evidence Convention Art 1, March 18, 1970, 23 U.S.T. 2555 ("In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence…."); 28 U.S.C. § 1781 (West 2018) (reprinting the Hague Evidence Convention and permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner"); Restatement (Third) of Foreign Relations Law of the United States § 474(2)(b) (Am. Law Inst. 2018) ("A United States district court, in order to obtain evidence for use in a proceeding before it, may…issue a letter rogatory requesting a court or other appropriate authority in a foreign state to direct the taking of evidence in that state."); *Hodson v. A.H. Robins Co., Inc.*, 528 F. Supp. 809, 820–21 (E.D. Va. 1981) (discussing the procedure for obtaining evidence from the United Kingdom through a letter of request under the Hague Convention for use in the instant proceeding).

Lockton's affirmative defense that it did perform, and Lockton's counterclaim that its failure to perform is attributable to the NRA.

## II. The NRA's Request Is Consistent with the Laws of the United Kingdom.

### A. The High Court of Justice Has Authority to Issue the Letter of Request.

The United Kingdom is a signatory to the Hague Evidence Convention, and English courts have the power to compel the production of documents for use in a foreign proceeding under appropriate circumstances.[15] Specifically, the High Court of Justice in England has power to give effect to a letter of request for production of documents where: (1) the letter of request is issued by or on behalf of a court exercising jurisdiction outside the United Kingdom, and (2) the evidence sought is for a purpose of a civil proceeding instituted before the requesting court.[16] Further, the issued letter of request should be given effect where it includes an order for the production of documents.[17]

Here, all of the conditions are met for the High Court of Justice to give effect to the letter of request filed herewith: (1) the United States District Court for the Eastern District of Virginia, a court exercising jurisdiction outside the United Kingdom, will issue the letter of request; (2) these documents are sought for the purpose of use at trial in *National Rifle Association of America v. Lockton Affinity Series of Lockton Affinity, LLC,* et al., Case No. 1:18-cv-00639-LO-JFA, a case currently pending before this Court; and (3) the letter of request only seeks the production of documents from Lloyd's.

---

[15] Hague Evidence Convention Art 42, March 18, 1970, 23 U.S.T. 2555; Evidence (Proceeding in Other Jurisdictions) Act 1975, c. 34, §§ 1, 2(1–2) (Eng.).

[16] Evidence (Proceeding in Other Jurisdictions) Act 1975, c. 34, §1 (Eng.).

[17] Evidence (Proceeding in Other Jurisdictions) Act 1975, c. 34, §2(2)(b) (Eng.).

**B.     The Request for Documents in Schedule B to the Letter of Request Conforms to the United Kingdom's Discovery Requirements.**

The documents the NRA is requesting conform to the United Kingdom's procedural requirements for discovery. Under the Hague Evidence Convention and the Evidence (Proceeding in Other Jurisdictions) Act, broad investigative pretrial discovery requests are precluded.[18] But a letter of request for production of documents will be given effect where it specifies particular documents for use at trial that appear likely to be in the possession, custody, or power of the entity called to produce it.[19] Specifically, English courts have held that "compendious descriptions of several documents" are permitted provided the exact documents sought are clearly identified.[20] Further, a document is likely to be in the possession, custody, or power of a person called to produce it where its existence is actual rather than conjectural.[21]

Here, Schedule B satisfies the English requirements for production of documents under the Evidence Act of 1975 Section 2(4). The Schedule B request is narrowly tailored and constitutes a clearly identified set of documents. In particular, the request seeks all documents in Lloyd's possession, custody, or control relating to the NRA for a specific time period. The *only* connection between Lloyd's and the NRA during the specified period was Lloyd's status as an underwriter of the NRA's affinity-insurance programs, and accordingly, *any* documents in

---

[18] *See* Hague Evidence Convention Art 23, March 18, 1970, 23 U.S.T. 2555 ("A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries."); Evidence (Proceeding in Other Jurisdictions) Act 1975, c. 34, §2(4) (Eng.); .); *Rio Tinto Zinc Corporation v. Westinghouse Elec. Corp.*, [1978] A.C. 547; *Re State of Norway's Application* [1987] 1 Q.B. 433.

[19] Evidence (Proceeding in Other Jurisdictions) Act 1975, c. 34, §2(4) (Eng.); *Rio Tinto Zinc Corporation v. Westinghouse Elec. Corp.*, [1978] A.C. 547; *Re State of Norway's Application* [1987] 1 Q.B. 433; *In re Asbestos Insurance Coverage Cases* [1985] 1 All ER 716.

[20] *In re Asbestos Insurance Coverage Cases* [1985] 1 All ER 716 ("[A]n [sic] 'monthly bank statements for the year 1984 relating to his current account' with a named bank would satisfy the requirements.").

[21] *Id.*

7

Lloyd's possession, custody, or control necessarily relate directly to the insurance programs, to Lockton's selection of Lloyd's as an underwriter for the programs, and any U.S. state proceedings related to whether Lloyd's underwriting activities in the program complied with applicable law.

**III.     CONCLUSION.**

For the reasons set forth above, Lloyd's communications with Lockton and any communications with U.S. state regulators go to the heart of the claims and defenses in this litigation. Accordingly, the NRA respectfully requests that the Court issue the Proposed Letter of Request to the High Court of Justice in England.

Dated: November 8, 2018                                    Respectfully submitted,

By: _____/s/ Robert H. Cox_____
James W. Hundley (VA Bar No. 30723)
Robert H. Cox (VA Bar No. 33118)
Amy L. Bradley (VA Bar No. 80155)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, VA  22182
jhundley@brigliahundley.com
rcox@brigliahundley.com
abradley@brigliahundley.com
Phone:  703-883-0880
Fax:  703-883-0899

Sarah B. Rogers (*pro hac vice*)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, Floor 14
New York, New York 10022
sbr@brewerattorneys.com
Phone: (212) 489-1400
Fax: (212) 751-2849

Charles J. Cooper (*pro hac vice*)
Michael W. Kirk (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
ccooper@cooperkirk.com
mkirk@cooperkirk.com

ATTORNEYS FOR THE NATIONAL
RIFLE ASSOCIATION OF AMERICA

## CERTIFICATE OF SERVICE

I certify that on November 8, 2018, I caused a copy of the foregoing to be served upon the following counsel electronically through the ECF system:

Timothy J. McEvoy
Patrick J. McDonald
CAMERON/MCEVOY PLLC
4100 Monument Corner Drive, Suite 420
Fairfax, VA 22030

Scott A. Edelman
Tawfiq S. Rangwala
Brenton T. Culpepper
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY 10005-1413

   /s/ Robert H. Cox
James W. Hundley (VA Bar No. 30723)
Robert H. Cox (VA Bar No. 33118)
Amy L. Bradley (VA Bar No. 80155)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, VA  22182
jhundley@brigliahundley.com
rcox@brigliahundley.com
abradley@brigliahundley.com
Phone:  703-883-0880
Fax:  703-883-0899

ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA

4839-6027-9672.3
2277-04

4830-2076-6329.1
2277-04